# EXHIBIT B

GLOBAL IP LAW GROUP, LLC
233 SOUTH WACKER DRIVE
SUITE 8400
CHICAGO, ILLINOIS 60606

312.357.2999

GIPLG.COM

**GLOBAL IP LAW GROUP**

C. Graham Gerst
GGERST@GIPLG.COM
312.283.8033

April 6, 2010

**VIA FEDERAL EXPRESS**

James Harrington
Tenneco Inc.
500 N. Field Drive
Lake Forest, IL 60045

Dear Mr. Harrington:

Re:  Infringement of U.S. Patent No. 5,251,294 (Abelow)

We represent Webvention, LLC, owner of United States Patent Number 5,251,294. Enclosed are the first few pages of the patent and claims, but the full 264-page-long patent is available on Webvention's website, www.webventionllc.com. As you will see, the '294 Patent is directed to structures and methods for organizing, presenting, and accessing information. It includes a highly detailed specification and cites more than 100 references presented to the Patent Office. Since its issuance in 1993, more than sixty other United States patents have cited the '294 Patent.

The invention detailed in the claims of the '294 Patent was developed by Daniel Abelow, an expert in the organization and presentation of information. He earned a Bachelor's of Science in Economics degree from the Wharton School of Business at the University of Pennsylvania in 1971 and a master's from Harvard University, which included graduate work at the Massachusetts Institute of Technology. He has consulted for numerous companies, such as Accenture, Agilent Technologies, Cisco, Harvard Business School, IBM, and Lotus Development, as well as Webvention, on presenting information via the internet.

The invention described by the '294 Patent has been used increasingly by companies in recent years, including use on websites incorporating advanced techniques to present information to users. To date, more than forty companies—including **Ameriprise Financial, Inc., Ann Taylor Stores, Gamefly Inc., Hewlett-Packard Co., Horizon Healthcare Services, Inc., Kimberly-Clark Corp., Lockheed Martin Corp., Orbitz, Panasonic, Samsung, Sears, Seiko-Epson,** and **Symantec**—have chosen to license the '294 Patent.

We have reviewed Tenneco's website at http://www.tenneco.com, and have prepared the enclosed claim chart demonstrating how the website infringes claims 28, 37, and 40 of the '294 Patent. The screen shots used in the charts are representative only; other screens and interactivity may infringe those claims as well. In addition to the charted claims, you should consider claims 29, 31-33, 41-44, 47, 53, 55, and 64, which may also be infringed by the website. Depending on how the website was constructed, claims 1-8, 12-21, and 78 may also be infringed during the design and programming of the website. Your company may also infringe the patent in other ways, such as your internal systems to organize and access information.

**The Webvention Licensing Opportunity**

Webvention's patented technology provides numerous benefits to Tenneco, including dramatically increased ease-of-use and, in all likelihood, improvements in many traditional measures of website usability and impact, such as visits, page views, time-on-site, ad clicks, and sales. The importance of the technology may vary from website to website, and Webvention reserves the right to adjust its licensing program to account for such differences in the future. For a limited time, however, Webvention has adopted a policy of a single, one-time, fully-paid licensing fee for a non-exclusive, company-wide right to use Webvention's technology.

The details of Webvention's license are set forth on the enclosed license agreement. In addition to the flat fee, Webvention is offering significant discounts for companies that agree to enter a license with Webvention promptly, as follows:

| License Entered & Payment Made | License Fee |
|---|---|
| Within 60 days of this letter | $80,000 |
| Between 60 and 90 days of this letter | $160,000 |
| More than 90 days after this letter | $300,000 |

We will be holding to these time frames in order to be fair to the companies that have already complied with them.

**Webvention, LLC**

Webvention is a limited liability company based in Marshall, Texas. More information about the company can be found at www.webventionllc.com.

**Global IP Law Group, LLC**

Global IP Law Group is a Chicago-based law firm focused on helping clients monetize patent portfolios. More information about the firm can be found at www.giplg.com.

Cordially,

C. Graham Gerst

Enclosures

**Notice**

Webvention Licensing LLC reserves all rights with regard to the '294 Patent, including (1) the right to seek damages anytime within the last six years that your company started to make use of Webvention's patented technology; (2) the right to change its royalty rates at any time; (3) the right to change this licensing program at any time without notice, including variance to conform to applicable laws. You should not rely on any communication or lack of communication from Global IP Law Group or Webvention as a relinquishment of any of Webvention's rights.

## US Patent 5,251,294 (Abelow): Tenneco Incorporated (pages accessed on December 8, 2009)

| Claim 28 | www.tenneco.com | Exhibits |
|---|---|---|
| A computer-based method for aiding a user in accessing a body of stored information which includes segments of related information, the method comprising | Users can access information about Tenneco and its products and services at its website ([http://www.tenneco.com/](http://www.tenneco.com/)) by using a computer connected to the Internet. | |
| displaying a set of labels, each label providing an abbreviated indication of information content of a corresponding one of said segments, | The homepage ([http://www.tenneco.com/](http://www.tenneco.com/)) displays six titled tabs ("Suppliers," etc.) arranged in a row at the top-right section of the webpage. Each titled tab corresponds to information related to the subject matter identified by the tab titled.<br><br>The website includes other examples of infringement. See: [http://www.tenneco.com/GlobalPresence/](http://www.tenneco.com/GlobalPresence/), but these are not separately charted. | |
| said labels being displayed in an organized model reflecting relationships among information contents of said corresponding segments, | As shown in the adjoining screen shot, the six titled tabs appear at the top of the home page. Those same tabs appear in numerous other pages on the site. And the information corresponding to these tabs is all general information about Tenneco. | |

Subject to Revision / Federal Rule of Evidence Rule 408

| | | |
|---|---|---|
| enabling a user to point to individual labels in said model using an electronic pointing technique, and | A user can point to a particular titled tab by moving the cursor (with a mouse, keyboard, touchscreen, etc.) over the titled tab ("mouse over"). |  |

Subject to Revision / Federal Rule of Evidence Rule 408

for each label to which said user points, displaying to the user, for previewing, the information content of the corresponding segment.

When the user "mouses over" one of the titled tab, a window appears below the tab, and that window provides general information about Tenneco for previewing.



Subject to Revision / Federal Rule of Evidence Rule 408

| Claim 37 | |
|---|---|
| The method of claim 28 wherein said body of stored information is available on-line from a remote location. | The information discussed above is available on-line to users, which is how these screen shots were obtained. |

Subject to Revision / Federal Rule of Evidence Rule 408

| Claim 40 | |
|---|---|
| The method of claim 28, further comprising displaying said set and said segments in windows. | As shown above, the segments of information are displayed in windows. |

## PATENT LICENSE AGREEMENT

This PATENT LICENSE AGREEMENT (this *"Agreement"*) is entered into on _____ (the *"Effective Date"*) by and between Webvention LLC, a Texas Limited Liability Company with an office in Marshall, Texas (*"Licensor"*), and _____, a _____ with an office at _____ (*"Licensee"*). Licensor and Licensee shall be referred to herein collectively as the *"Parties,"* and individually as a *"Party."*

### BACKGROUND

WHEREAS, Licensor owns the Licensed Patents (as defined in Section 1.1 below) and desires to grant a license for certain Licensed Uses (a defined in Section 1.2 below) under the claims of the Licensed Patents.

WHEREAS, Licensee desires to obtain a release and license from Licensor under the claims of the Licensed Patents for the Licensed Uses.

WHEREAS, Licensor is willing to provide a license and release in exchange for a reduced Payment amount because Licensee is obtaining this release and license early in Licensor's licensing campaign.

NOW, THEREFORE, in consideration of the above premises and the mutual covenants of the Parties as set forth herein, Licensor and Licensee, intending to be legally bound, agree as follows:

## 1.   DEFINITIONS

In addition to the terms defined elsewhere in this Agreement, as used in this Agreement:

1.1   *"Licensed Patents"* means (i) United States Patent No. 5,251,294; (ii) all patents or patent applications claiming priority to the file date of United States Patent No. 5,251,294; and (iii) all foreign counterparts, reissues, reexaminations, extensions, continuations, continuations in part, continuing prosecution applications, and divisions of United States Patent No. 5,251,294.

1.2   *"Licensed Uses"* means any use of inventions claimed in the Licensed Patents, except preparing, developing, hosting, or managing websites for third parties other than Licensee and Licensee Subsidiary that are operated under that third party's brand.

1.3  "*Licensee Subsidiary*" means any entity that Licensee controls.  For purposes of this definition, "controls" means: (a) if Licensee has voting shares or other voting securities, ownership and control of fifty percent (50%) or more of the outstanding shares or securities entitled to vote for the election of directors or similar managing authority of such entity; or (b) if Licensee does not have voting shares or other voting securities, ownership and control of fifty percent (50%) or more of the ownership interests that represent the power to direct the management and policies of such entity.  An entity shall be deemed to be a Licensee Subsidiary under this Agreement only so long as all the requirements of being a Licensee Subsidiary are met.

1.4  "*Territory*" means all jurisdictions in which Licensor has valid and enforceable patent rights.

## 2.  LICENSE

2.1  Grant of License.  Upon payment pursuant to subsection 4.1, Licensor on behalf of itself and its successors and assigns hereby grants to Licensee and Licensee Subsidiaries (and third parties accessing Licensee's website solely with respect to access to that website) a non-exclusive, non-transferable (subject to Section 10.1), non-sublicensable (subject to Section 5.3), fully paid-up irrevocable and perpetual license under the Licensed Patents solely for the Licensed Uses in the Territory.

## 3.   RELEASES

3.1   **Releases by Licensor.** Upon payment pursuant to subsection 4.1, Licensor, on behalf of itself and its successors and assigns, hereby fully, irrevocably and unconditionally releases, acquits and discharges Licensee and any Licensee Subsidiary and their respective officers, directors, agents, employees, attorneys, successors, and assigns (and third parties accessing Licensee's website solely with respect to access to that website), from any and all causes of action, claims or demands, liabilities, losses, damages, attorney's fees, court costs, or any other form of claim or compensation, known or unknown, arising out of or based on any of the Licensed Uses on or before the Effective Date (collectively, *"Licensor Released Claims"*).  Notwithstanding the foregoing, this Section 3.1 shall not apply to any causes of action arising out of the breach of this Agreement by Licensee or third-party claims that are not related to the Licensor Released Claims.

3.2   **Releases by Licensee.** Upon payment pursuant to subsection 4.1, Licensee, on behalf of itself, its successors and assigns, and each Licensee Subsidiary, hereby fully, irrevocably and unconditionally release, acquits and discharges Licensor and its officers, directors, agents, employees, attorneys, successors and assigns from any and all causes of action, claims or demands, liabilities, losses, damages, attorney's fees, court costs, or any other form of claim or compensation, known or unknown, arising solely out of the Licensed Patents on or before the Effective Date.  Notwithstanding the foregoing, this Section 3.2 shall not apply to any causes of action arising out of the breach of this Agreement by Licensor or to any other claims or causes of action that are not enumerated in this Section 3.2.

3.3   **Releases.**  The releases in this Agreement include an express, informed, knowing, and voluntary waiver and relinquishment to the fullest extent permitted by law.  In this connection, the Parties acknowledge that they may have sustained damages, losses, costs, or expenses which are presently unknown and unsuspected and that such damages, losses, costs, or expenses as may have been sustained may give rise to additional damages, losses, costs, or expenses in the future.  The Parties hereto further acknowledge that they have negotiated this Agreement taking into account presently unsuspected and unknown claims, counterclaims, causes of action, damages, losses, costs, and expenses, and the Parties hereto voluntarily and with full knowledge of its significance, expressly waive and relinquish any and all rights they may have under any state or federal statute, rule or common law principle, in law

or equity, relating to limitations on general releases. The Parties voluntarily and with full knowledge of its significance, expressly waive and relinquish any and all rights they may have under any state or federal statute, rule or common law principle, in law or equity, relating to limitations on releases.

**3.4   Unknown Claims.** The Parties acknowledge that there is risk that after the Effective Date, they will discover, incur or suffer claims that are related to, or arise from facts connected with, the matters released under Sections 3.1 and 3.2 above, and arose in any way, in whole or in part, before the Effective Date, and that were unknown or unanticipated as of the Effective Date (collectively, the "Unknown Claims"). Nonetheless, to the extent that Licensee or Licensee Subsidiary is located or has operations in California, to the full extent permitted by applicable law, each of Licensor and Licensee hereby waives, relinquishes and discharges any and all Unknown Claims, and waives, relinquishes and discharges any and all rights it may have with respect to any Unknown Claims, including any rights provided by California Civil Code § 1542 (and similar provisions in other jurisdictions), which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

## 4.   CONSIDERATION

**4.1   Payment.** In consideration of the license granted in Section 2.1, the release granted in Section 3.1, and other terms and conditions of this Agreement, Licensee shall pay Licensor a fully paid-up, non-refundable, lump-sum payment equal to three hundred thousand dollars (U.S. $300,000) ("*Payment*"). Payment shall occur within ten (10) calendar days of the Effective Date. Payment shall be by wire transfer to the following account:

> Wells Fargo Bank
> Webvention Licensing, LLC
> 505 East Travis Street
> Suite 209
> Marshall, TX 75670
> Account Number: 8786890189
> Routing number: 121000248

The Parties agree this is settlement and no representation is made that the foregoing consideration represents a reasonable royalty for the infringement alleged by Licensor.

## 5. RESERVATION OF RIGHTS

**5.1 Reserved Rights.** Any and all rights not explicitly granted to Licensee in Sections 2.1 and 3.1 are expressly reserved by Licensor. No licenses to the Licensed Patents are granted by Licensor to Licensee, or any other entity, either by implication, estoppel, or otherwise, other than the licenses specifically enumerated and expressly provided in Section 2.1.

**5.2 No Sublicense Rights.** Except as expressly provided in Sections 5.3 and 10.1, the license and releases granted to Licensee herein do not confer upon Licensee the right to grant or otherwise transfer via sublicense any rights under the Licensed Patents to any other persons or entities for any purpose.

**5.3 Sublicense to Licensee Subsidiary.** At its sole and absolute discretion, Licensee may sublicense all or any portion of the rights set forth in paragraph 2.1 at any time, and from time to time, to any Licensee Subsidiary on such terms as it deems fit, on the conditions that (i) the rights granted under such sublicense apply to such Licensee Subsidiary only for such time as each such Licensee Subsidiary remains a Licensee Subsidiary; (ii) no such sublicense by Licensee shall be further sublicensable; and (iii) any such sublicense granted by Licensee shall terminate promptly upon the termination of this Agreement or, with respect to the license granted under Section 2.1, upon termination of such license.

## 6. REPRESENTATIONS, WARRANTIES AND COVENANTS

**6.1 Representations, Warranties and Covenants of Licensee.** Licensee represents, warrants and covenants that: (i) execution of this Agreement by Licensee and the performance of its obligations hereunder will not violate any agreement, whether written or oral, to which Licensee is a party; (ii) Licensee has the full legal authority necessary to enter into this Agreement and perform the duties and obligations outlined herein; and (iii) neither Licensee nor any Licensee Subsidiary shall contest or assist in the contest in any forum, including the Federal Courts, whether under 28 U.S.C. §§ 2201 – 2202 or not, the United States Patent and Trademark Office, and/or the International Trade Commission, that the Licensed Patents are invalid or unenforceable; provided, however, this covenant shall not apply in the event

that Licensor seeks to hold any Licensee or any Licensee Subsidiary liable for infringement of the Licensed Patents.

6.2    **Representations, Warranties and Covenants of Licensor.** Licensor represents, warrants and covenants that: (i) it has full authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby; (ii) it holds the entire rights, title, and interest necessary to grant the license to the Licensed Patents and has not transferred or assigned any rights to bring any claim for patent infringement, against Licensee or any Licensee Subsidiary for damages, or otherwise under the Licensed Patents to any third-party; (iii) the execution of this Agreement by Licensor and the performance of its obligations hereunder will not violate any agreement, whether written or oral, to which Licensor is a party; and (iv) Licensor represents and warrant that it has not assigned or transferred any interest in any claim released hereunder.

6.3    **No Further Representations or Warranties.** EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS SECTION 6, LICENSOR MAKES NO REPRESENTATIONS OR WARRANTIES TO LICENSEE OF ANY KIND, EITHER EXPRESS OR IMPLIED, WITH REGARD TO THE VALIDITY OR ENFORCEABILITY OF THE LICENSED PATENTS AND ASSUMES NO RESPONSIBILITIES WHATSOEVER WITH RESPECT TO THE USE OR OTHER DISPOSITION BY LICENSEE, A LICENSEE SUBSIDIARY, OR THIRD-PARTIES ACCESSING LICENSEE'S OR A LICENSEE SUBSIDIARY'S WEBSITE FOR THE LICENSED USES OF THE LICENSED PATENTS UNDER THIS AGREEMENT.  IN ADDITION, LICENSOR MAKES NO REPRESENTATION THAT USE OF THE LICENSED PATENTS WILL NOT INFRINGE, DIRECTLY, CONTRIBUTORILY, OR BY INDUCEMENT, ANY PATENT, COPYRIGHT, TRADEMARK OR OTHER PROPRIETARY RIGHT OF ANY THIRD PARTY.

7.    LIMITATION OF LIABILITY

7.1    **Limitation of Liability.** EXCEPT IN THE EVENT OF FRAUD, LICENSOR'S TOTAL LIABILITY UNDER THIS AGREEMENT SHALL NOT EXCEED THE PAYMENT SET FORTH IN SECTION 4.1 OF THIS AGREEMENT THAT IS ACTUALLY PAID AND RECEIVED BY LICENSOR.  LICENSEE'S TOTAL LIABILITY UNDER THIS AGREEMENT SHALL NOT EXCEED THE PAYMENT SET FORTH IN SECTION 4.1 OF THIS AGREEMENT.   THE PARTIES ACKNOWLEDGE THAT THESE LIMITATIONS ON POTENTIAL LIABILITIES WERE AN ESSENTIAL ELEMENT IN SETTING CONSIDERATION UNDER THIS AGREEMENT.

7.2    Limitation on Consequential Damages.  NEITHER PARTY SHALL HAVE ANY OBLIGATION OR LIABILITY (WHETHER IN CONTRACT, WARRANTY, TORT (INCLUDING PASSIVE OR IMPUTED NEGLIGENCE AND STRICT LIABILITY) OR OTHERWISE), FOR ANY INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES OR LOSS OF REVENUE, PROFIT, SAVINGS, OR BUSINESS ARISING FROM OR OTHERWISE RELATED TO THIS AGREEMENT, EVEN IF A PARTY OR ITS EMPLOYEES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

## 8.    CONFIDENTIALITY

8.1.    The terms of this Agreement (but not the existence of the Agreement) shall be regarded as *"Confidential Information."*  The Parties agree that they shall not disclose any Confidential Information without prior written consent of the other Party; provided, however, that each Party may disclose Confidential Information to such Party's fiduciary professionals, including its auditors, accountants, and attorneys, without prior written consent, and each such disclosing Party shall ensure that the Confidential Information remains confidential in accordance with this Section 8 with such fiduciary professionals; provided further that either Party may disclose this Agreement and its terms to lawyers and retained expert witnesses in any litigation in which that Party becomes involved for use subject to any pending Protective Order after providing written notice to the other Party of that disclosure, but without requiring prior consent from that other Party.

8.2    Confidential Information shall not include information that: (i) is or at any time becomes publicly available through no fault of the receiving Party, its employees, consultants, or agents; (ii) is received without restriction from a third party lawfully in possession of such information and lawfully empowered to disclose such information; (iii) was rightfully in the possession of the receiving Party without restriction prior to its disclosure by the disclosing Party; (iv) was independently developed by employees, consultants, or agents of the receiving Party without access to such Confidential Information; or (v) is required to be disclosed pursuant to the order or requirement of a court, administrative agency, or other governmental body; provided, however, that the receiving Party provide prompt notice of such court order or requirement to the disclosing Party to enable the disclosing Party, at its sole expense, to seek a protective order or otherwise prevent or restrict such disclosure and that the receiving Party only discloses such information as is necessary to comply with such order or requirement.

9.    TERM

This Agreement shall commence as of the Effective Date, after execution of this Agreement by all Parties, and shall continue until six years after the expiration of the last-to-expire Licensed Patent or the expiration of any cause of action arising out of or related to the Licensed Patents, which is later, unless earlier terminated as allowed by this Agreement.

10.   ASSIGNMENT

10.1. Assignment by Licensee.  Neither this Agreement, nor any rights or obligations hereunder, may be assigned, encumbered, or otherwise transferred by Licensee, except as expressly allowed herein.  Licensee may assign any or all of its rights or delegate any or all of its duties under this Agreement if Licensee desires to assign Licensee's rights under this Agreement to a purchaser of all or substantially all of the assets of the Licensee by either acquisition, merger, or other transfer.

10.2 Assignment by Licensor.  Licensor may sell, assign, or otherwise transfer this Agreement, the Licensed Patents, or any rights hereunder, provided that: (i) Licensor provides such third party with prior notice of the existence of this Agreement; and (ii) such third party agrees to be bound by the terms and conditions, including all licenses, releases, and covenants set forth in this Agreement. IF SUCH THIRD PARTY DOES NOT AGREE TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT, THEN SUCH ASSIGNMENT OR TRANSFER SHALL BE NULL AND VOID.

11. MISCELLANEOUS

11.1  No Agency.  Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee, or joint venture relationship between the Parties. Neither Party assumes any liability of or has any authority to bind, or control the activities of, the other.

11.2  Entire Agreement, Amendments, and Waivers.  This Agreement constitutes and contains the entire agreement between the Parties, and supersedes any and all prior negotiations, conversations, correspondence, understandings, and letters respecting the subject matter hereof. The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. This Agreement may only be amended or modified by written document that

is signed by both Parties.  Failure by either Party to enforce any term of this Agreement shall not be deemed a waiver of future enforcement of that or any other term in this Agreement or any other agreement that may be in place between the Parties.

11.3   Severability. If any provision of this Agreement is found to be invalid or unenforceable, then the remainder of this Agreement shall have full force and effect, and as to the invalid provision the Parties shall attempt in good faith to negotiate a substitute for any such provision, which shall most nearly approximate the intent of the Parties in entering into this Agreement.

11.4   Compliance With Laws.  Notwithstanding anything contained in this Agreement to the contrary, the obligations of the Parties shall be subject to all laws, present and future, of any government having jurisdiction over the Parties and this transaction, and to orders, regulations, directions or requests of any such government.

11.5   Counterparts; Electronic Signatures.  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together constitute one and the same instrument.  Each Party shall execute and deliver to the other Parties a copy of this Agreement bearing its original signature.  Prior to such execution and delivery, in order to expedite the process of entering into this Agreement, the Parties acknowledge that copies of this Agreement transmitted via email of a .pdf file, photocopy, facsimile or other process of complete and accurate reproduction and transmission shall be deemed original documents.

In witness whereof, the Parties have executed this Patent License Agreement as of the Effective Date.

LICENSOR:                              LICENSEE:

Webvention LLC                         NAME OF LICENSEE,

By:_____           By:_____

Name:_____           Name:_____

Title:_____          Title:_____

Date:_____           Date:_____